**RAILEX CORPORATION, Plaintiff,**

**v.**

**JOSEPH GUSS & SONS, INC., and G. A. Braun, Inc., Defendants.**

**Civ. A. No. 2062-64.**

United States District Court
District of Columbia.
March 10, 1966.

Donald L. Dennison, Dennison & Dennison, Washington, D. C., John M. Calimafde, Hopgood & Calimafde, Stanley I. Rosen, New York City, for plaintiff.

Dos T. Hatfield, Washington, D. C., Thomas Cifelli, Jr., Richards & Cifelli, Newark, N. J., for defendants.

JACKSON, District Judge.

This cause came on for determination of defendants' motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, Title 28 U.S.C.A., on the ground of alleged failure of plaintiff to join an indispensable party in this civil action for patent infringement under 35 U.S.C. § 281.

The essential question raised by this motion is whether plaintiff had the requisite title to the patents in suit at the time of filing the Complaint on August 21, 1964.

On November 21, 1961 plaintiff had transferred title to the applications which later matured into the patents in suit to the Small Business Administration (hereinafter designated as SBA) as security for a loan obtained by plaintiff from SBA. The most pertinent provisions of this original deed of assignment of November 21, 1961 are as follows:

"This assignment is made upon the understanding that the Assignor reserves. * * *

(b) The right at the sole charge and expense of the Assignor to bring suit for infringement against infringers of said Letters Patent or any of them in the name of Assignor and SBA as complainants. * * *"

Provided always, and this assignment is made upon the express condition that if the Assignor shall punctually and fully pay or cause to be paid unto SBA the full amount payable upon or with respect to said note, according to its terms, together with interest thereon * * * this assignment shall be null and void, and said Letters Patent and applications for Letters Patent shall be reassigned to the Assignor but shall otherwise remain in full force and effect."

In Waterman v. Mackenzie, 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923 (1890), the Supreme Court held that the nature of a document transferring a particular right or interest under a patent "does not depend upon the name by which it calls itself, but upon the legal effect of its provisions." 138 U.S. at 256, 11 S.Ct. at 335.

In the *Waterman* case the Supreme Court held that a deed of "assignment" of November 25, 1884 was actually a mortgage of the patent in suit, intended as security for a promissory note of the same date evidencing a debt of $6500. The maturity date of the note was November 25, 1887, i. e., three years after the November 25, 1884 date of the note and security mortgage. On April 24, 1886, prior to the maturity date of the

note, and prior to full payment of the debt evidenced by the note, the mortgagor's exclusive licensee had filed a bill in equity for patent infringement. The Supreme Court held that the suit in equity was properly dismissed, since at the time the action was brought the whole title, both legal and equitable, was held by the mortgagee's assignee, who was not a party to the suit brought by the mortgagor's exclusive licensee. The Opinion of Mr. Justice Gray stressed the security aspect of the mortgage, which was intended as security for the $6500 note, and also distinguished mortgages of personal property from those of real estate. In a realty mortgage the mortgagor normally remains the equitable owner of the property, and the mortgagee takes either bare legal title or a mere lien on the property, depending upon whether the particular state involved applies the title theory or lien theory of real estate mortgages.

Mr. Justice Gray distinguished that situation from the personalty mortgage, wherein the mortgagee acquires the whole (equitable and legal) title in the following words:

> "By a mortgage of personal property * * * both at law and in equity, the whole title is transferred to the mortgagee, as security for the debt, subject only to be defeated by performance of the condition, or by redemption on bill in equity within a reasonable time * * *." 138 U.S. at 258, 11 S.Ct. at 336.

Then the Supreme Court held that, at least prior to repayment of the debt secured by the mortgage, the patent mortgagee (or his assignee), as the owner of the whole title to the patent, was therefore the only person entitled to maintain either an action at law or a suit in equity for infringement of the patent.

In the present case all parties to the action and the Court agree that the original November 21, 1961 "assignment" was really a mortgage transaction, like the November 25, 1884 "assignment" in the *Waterman* case. Likewise, this civil action, in which the complaint was filed August 21, 1964, was brought prior to the November 21, 1971 maturity date of the note secured by the mortgage to SBA of the patents in suit. However, the Court is of the opinion that there is a critical distinction between the facts of the present case and those of *Waterman*. In the *Waterman* case, the facts indicate that the bill in equity was filed *prior* to repayment in full of the $6500 debt evidenced by the promissory note and secured by the mortgage; and the Supreme Court placed great stress on the security value of the mortgage. In the present case, however, the complaint was filed August 21, 1964, a date which was *subsequent* to repayment in full by the plaintiff-mortgagor of the SBA loan which was secured by mortgage of the patents in suit to SBA. The loan was repaid in full on July 31, 1964, as evidenced by the fact that the note was stamped "PAID", signed, and dated by the authorized SBA certifying officer on that date. Since the "assignment" or mortgage of the patents in suit was intended only as security for the SBA loan, the Court holds that plaintiff immediately reacquired equitable title to the mortgaged patents on July 31, 1964, when the SBA loan was repaid in full. Legal title, however, continued to be held by mortgagee SBA until April 26, 1965, at which time legal title was reassigned to the plaintiff-mortgagor by SBA with a provision in this second assignment that "this assignment includes the right to sue and recover for past infringements, against all persons or parties except the United States Government and its Agencies."

Although the SBA no longer held equitable title to the patents during the interval between July 31, 1964, and April 26, 1965, the agency continued to hold the bare legal title as constructive trustee for the benefit of plaintiff-mortgagor, but no longer as security for the SBA loan, which had been repaid in full

on July 31, 1964. Thus the further issue arises as to whether plaintiff, as equitable owner of the patents in suit on August 21, 1964, was entitled under 35 U.S.C. § 281 to bring this civil action for patent infringement at that time without joining SBA, the holder of legal title, as a party to the action.

 Initially, it should be mentioned that F.R.C.P. Rule 2 abolishes only the procedural distinctions but not the substantive distinctions between law and equity. Stainback v. Mo Hock Ke Lok Po, 336 U.S. 368, 382, 69 S.Ct. 606, 93 L.Ed. 741 (1949). The substantive distinctions between legal and equitable rights and remedies are still applicable in the Federal Courts, particularly with regard to the constitutional right to trial by jury "in suits at common law" delared by the Seventh Amendment.[1] The distinction between actions at law and suits in equity for patent infringement prior to adoption of the Federal Rules in 1938 was set forth by the Supreme Court in Waterman v. Mackenzie, supra, 138 U.S. at 260, 11 S.Ct. 334. The distinction is based on the nature of relief sought in a patent infringement case, and this distinction is still applicable in determining the right of trial by jury or by the Court under F.R.C.P. Rules 38 and 39. When the relief sought is limited to an award of compensatory money damages, which may be trebled in appropriate circumstances, then the case may be designated as a civil jury action in the nature of an action at law, and the parties are entitled to a trial by jury as a matter of constitutional right.[2] On the other hand, when the relief sought is primarily equitable, such as preliminary and final injunctions and an accounting of profits, with a prayer for incidental legal relief in the form of an award of money damages, then the case is a civil non-jury action in the nature of a suit in equity, and the parties are not entitled to demand trial by jury as a matter of right either under the Seventh Amendment or the Patent Act of 1952, Title 35 U.S.C.[3]

In the present case plaintiff has prayed for injunctive relief and for an equitable accounting for profits, as well as incidental legal relief in the form of an award of money damages, and this case is, therefore, essentially a civil non-jury action for patent infringement in the nature of a suit in equity.[4] It was with this substantive distinction between law and equity in mind that the Court previously sustained defendants' opposition to plaintiff's motion for trial by jury under Rule 39(b) on May 7, 1965.

 Even if plaintiff had initially been entitled as a matter of constitutional right to a trial by jury, and the Court is not persuaded by the precedents relied upon by plaintiff that such is the law, plaintiff waived trial by jury under F.R.C.P. Rule 38(d) as to two of the three patents in suit by failure to make timely demand for jury trial under Rule 38(b) within 10 days of the original answer of September 11, 1964, at which time the cause was calendared by the Court Clerk. May v. Melvin, 78 U.S.App.D.C. 368, 141 F.2d 22 (D.C. Cir. 1944). On March 2, 1965, the Court granted plaintiff's motion under F.R.C.P. Rule 15 for the sole express purpose of permitting plaintiff to file "an amended and supplemental complaint bringing United States Patent

---

1. Black v. Boyd, 248 F.2d 156 (6th Cir. 1957); Chichester v. Kramer, 157 F.Supp. 79 (D.C.N.Y.1957); Bellavance v. Plastic-Craft Novelty Co., 30 F.Supp. 37 (D.C. Mass.1939).

2. Binger v. Unger, 7 F.R.D. 121 (D.C.N.Y. 1946); Comfy Mfg. Co. v. Dyer-Gruen-Jackson, Inc., 2 F.R.D. 293 (D.C.Pa. 1942); Eastman Kodak Co. v. McAuley, 2 F.R.D. 21 (D.C.N.Y.1941).

3. Davies v. Allied Indus. Products, 100 F.Supp. 109, (D.C.Ill.1951); Protexol Corp. v. Koppers Co., 12 F.R.D. 7 (S.D. N.Y.1951); Reliable Machine Works v. Unger, 144 F.Supp. 726 (S.D.N.Y.1956).

4. Innersprings, Inc. v. Joseph Aronauer, Inc., 27 F.R.D. 32 (E.D.N.Y.1961).

No. 3,152,682 into the action." Neither the grant of the motion nor the filing of the amended and supplemental complaint operated to revive any previously waived right to jury trial on the issues of validity and infringement of the two patents originally in suit, i. e., U.S. Patents Nos. 3,010,584 and 3,118,531. Roth v. Hyer, 142 F.2d 227 (5th Cir. 1944). Although a timely demand for trial by jury was made by plaintiff on March 8, 1965 with respect to any new issues brought into this case by the new third patent, the Court is of the opinion that only essentially the "same general issues" are involved as those raised by defendants' original answer of September 11, 1964, which was the "last pleading directed to such issue(s)." F.R.C.P. Rule 38 (b).

This view is based on the facts that the specifications of U.S. 3,118,531 and U.S. 3,152,682 are apparently identical and the claims of U.S. 3,152,682, newly in suit, are apparently dominated by the claims of U.S. 3,118,531, originally in suit. Furthermore, new U.S. 3,152,682 was granted on a divisional application under 35 U.S.C. § 121, and contains subject matter divided out of the original application which matured into U.S. 3,118,531.

■ Plaintiff apparently recognized its inability to demand a trial by jury as a matter of constitutional right in this action by filing a motion under F.R.C.P. Rule 39(b), seeking to invoke the Court's discretion to order a trial by jury of all issues in the action. In support of the motion, plaintiff chiefly relied on two precedents, one of which states that "when the discretion of the court is invoked under Rule 39(b), the court should grant a jury trial in the absence of strong and compelling reasons to the contrary." Swofford v. B. & W., Inc., 336 F.2d 406, (5th Cir. 1964). Although trial judges are sometimes reluctant to express the true reason why District Courts traditionally refuse to invoke their broad discretion under F.R.C.P. Rule 39(b) to grant jury trials in patent cases the Fifth Circuit must be presumed to be aware of the "strong and compelling reasons to the contrary," since in H. B. Zachry Co. v. Terry, 195 F.2d 185 (5th Cir. 1952), a case in which Judge Rives, the author of the *Swofford* Opinion, sat as a member of the Court, the Fifth Circuit adopted Professor Moore's suggestion "that the court should determine whether the issues, even with the aid of a master, are too complex for jury trial and grant or deny a jury on that practical basis. 3 Moore's Federal Practice, § 38.-02, p. 3012." The complex issues of validity, infringement, and accounting in patent cases do not often lend themselves today to proper determination by a lay jury, and it may frequently be necessary, in jury trials of patent cases, for the Court to set aside the jury verdict and render judgment *non obstante veredicto* in the interest of justice, in which event the end result is the same as if there had been no jury trial in the first place. See Fraver v. Studebaker Corp., 112 F. Supp. 209 (W.D.Pa.1953).

Congress has recognized the complexity of the issues involved in current patent cases even to Federal Courts, let alone lay juries, by establishing a special Federal Court of Customs and Patent Appeals to hear and determine appeals from the Patent Office under 35 U.S.C. §§ 141–144, and by conferring exclusive original jurisdiction on the U. S. District Court for the District of Columbia, and no other District Court in the entire United States, to hear and determine civil actions to obtain patents under 35 U.S.C. § 145.[5]

Likewise, the Supreme Court has recently recognized the fact that the issues

5. An action under 35 U.S.C. § 145 is a civil non-jury action in the nature of a suit in equity. The predecessor statute, Section 4915 of the Revised Statutes, specifically identified the proceeding as a "bill in equity." See Bijur et al. v. Coe, 51 USPQ 213 (1941).

involved in patent cases today are often far more complex than the issues involved in patent cases of fifty years ago. In the introduction to the Opinion in the 35 U.S.C. § 103 cases, Mr. Justice Clark states the following:

"Technology, however, has advanced—and with remarkable rapidity in the last 50 years. Moreover, the ambit of applicable art in given fields of science has widened by disciplines unheard of a half-century ago. It is but an even-handed application to require those persons granted the benefit of a patent monopoly be charged with an awareness of these changed conditions." Graham et al. v. John Deere Co. of Kansas City et al., 86 S.Ct. 684 (1966).

The second case upon which plaintiff principally relied in attempting to invoke the Court's broad discretion under F.R. C.P. 39(b) to order a trial by jury is Dairy Queen, Inc. v. Wood et al., 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962). The *Dairy Queen* case involved an action for breach of contract and trademark infringement, but the present case does not involve any breach of contract issues and is brought for alleged patent infringement only. A lay jury which might be able to satisfactorily resolve the issues involved in a trademark case could become hopelessly lost in an attempt to resolve the more complex issues of a patent case involving complicated mechanical inventions, such as are involved in the present civil action.

■ Also, the alleged infringer (Petitioner Dairy Queen) made a timely demand for a trial by jury in the *Dairy Queen* case, and there is sound policy in favor of granting an alleged trademark infringer a trial by jury when it makes a timely demand therefor. Patent and trademark infringement are torts, or private wrongs, somewhat analogous to public wrongs, or crimes, as to which there is a constitutional right of trial by jury under the Sixth Amendment.

This same policy consideration would hardly be applicable to the facts of the present case wherein plaintiff, the equitable owner of the patents in suit, failed to make a timely demand for trial by jury, at least with respect to two of the three patents, and defendants, the alleged patent infringers, vigorously opposed the granting of jury trial either as a matter of right under F.R.C.P. Rule 38 or as a matter of sound discretion under F.R. C.P. Rule 39(b). Since a final judgment of infringement of any or all of the patents in suit might well bankrupt the defendants, the Court is of the opinion that they ought to have some voice in the matter of whether their trial is to be by jury or by the Court.

Lastly, the Supreme Court has recently indicated that the *Dairy Queen* doctrine is not as broad as some writers and Courts have thought. In expressly rejecting an argument based on "the *Dairy Queen* doctrine," the Supreme Court in Katchen v. Landy, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966) cited with approval the following passage from Barton v. Barbour, 104 U.S. 126, 133, 26 L. Ed. 672 (1881) in answering the argument that disputed claims in bankruptcy cases must be tried before a jury:

"But those who use this argument lose sight of the fundamental principle that the right of trial by jury, considered as an absolute right, does not extend to cases of equity jurisdiction. If it be conceded or clearly shown that a case belongs to this class, the trial of questions involved in it belongs to the court itself, no matter what may be its importance or complexity."

■ Since this civil action is essentially a suit in equity, the Court holds that plaintiff, as equitable owner of, and holder of equitable title to, the patents in suit as of August 21, 1964, the time of filing the Complaint, is entitled to invoke the jurisdiction of this Court of equity,[6] which may grant additional legal relief

---

6. Papazian v American Steel and Wire Co. of N. J., 155 F.Supp. 111 (D.C.Ohio 1957); Hartley Pen Co. v. Lindy Pen Co., 16 F.R.D. 141 (D.C.Cal.1954).

in the form of an award of money damages where appropriate.[7]

The Court further holds that mortgagee SBA, as holder of bare legal title to the patents in suit as of August 21, 1964, is neither an indispensable nor a necessary party in the present civil nonjury action in the nature of a suit in equity. Therefore, defendants' motion for summary judgment for alleged failure of plaintiff to join an indispensable party is denied, and the parties should prepare for trial by the Court commencing May 2, 1966, of the issues of validity and infringement of the three patents in suit in this civil action in the nature of a suit in equity. If the Court should hold any of the patents, or all of them, to be valid and infringed, then further accounting proceedings may be held at a later date, possibly after appeal under 28 U.S.C. § 1292(a)(4), to determine the profits and damages, if any, to be awarded to plaintiff.

7. Katchen v. Landy, supra, 86 S.Ct. 684.