**CRANE CO., Plaintiff,**

v.

**AMERICAN STANDARD, INC., et al., Defendants.**

No. 68 Civ. 1845.

United States District Court, S. D. New York.

Feb. 10, 1971.

Pomerantz, Levy, Haudek & Block, Lord, Day & Lord, New York City, Abraham L. Pomerantz, William E. Haudek, John W. Castles, 3d, Michael J. Murphy, New York City, of counsel, for plaintiff.

Sullivan & Cromwell, New York City, David W. Peck, George C. Kern, Jr., Edward W. Keane, Robert M. Osgood, New York City, of counsel, for defendant American Standard, Inc.

Cahill, Gordon, Sonnett, Reindel & Ohl, New York City, for defendant Blyth & Co., Inc.

MANSFIELD, District Judge.

This case comes to us upon remand from the Court of Appeals, which on December 10, 1969, reversed in part and affirmed in part a judgment entered by this court (Ryan, J.) on June 5, 1968, denying plaintiff's motion for preliminary injunctive relief and dismissing the complaint upon the merits. See Crane Co. v. Westinghouse Air Brake Co., 419 F.2d 787. Defendants now move for an order defining and limiting the issues to be determined on remand and striking plaintiff's claim for money damages as set forth in answers to defendants' interrogatories dated May 21, 1970. Our ruling as to the issues raised by plaintiff's contemplated claim for money damages is set forth below.

In June 1967, Crane Co. ("Crane"), having decided that it would be advantageous to acquire the Westinghouse Air Brake Co. ("Air Brake"), began to purchase Air Brake stock on the open market through a nominee. Late in August 1967, after having purchased 133,000 Air Brake shares, Crane approached the management of Air Brake with a proposal that Air Brake be merged into Crane. The proposal was later rejected by Air Brake, but Crane continued with its program of purchasing Air Brake stock.

By January 1968, Crane had purchased more than 10% of Air Brake's stock, and by May 1968 its holdings amounted to 32%. Air Brake's management continued to resist these unwanted advances by Crane. First, an amendment to Air Brake's by-laws was adopted on December 7, 1967, which operated to increase the percentage stock ownership required to elect one Air Brake director from 9% to 25%. In addition, Air Brake entered into negotiations with American Standard, Inc. ("Standard") in hopes of achieving a friendly merger of Air Brake into Standard. Since Standard and Crane were major competitors in the plumbing and heating equipment industry, such a merger might require Crane to sell its Air Brake stock to avoid antitrust liability.

The negotiations between Air Brake and Standard were successful. On March 4, 1968, Air Brake and Standard agreed, subject to stockholder approval to be sought on May 16, to merge Air Brake into Standard. Crane, opposing the merger, persisted with its program of open market purchases of Air Brake stock and, during the week of April 8, 1968, announced a tender offer which was to expire on April 19, 1968, although it was subsequently extended three times. Air Brake stockholders were offered a package of Crane subordinated debentures valued at roughly $50 for each share of Air Brake stock. On the final day of the tender offer, April 19, Standard purchased 170,000 shares of Air Brake on the open market at an average price of $49.08. It also sold, at an average price of approximately $44, some 140,000 Air Brake shares in private sales not on the open market. Despite Crane's large ownership of Air Brake stock and numerous lawsuits brought by Crane in state and federal courts in New York and Pennsylvania, on May 16, 1968, the merger was approved by the shareholders of Air Brake, 2,903,869 shares being voted for the merger and 1,180,298 against it.

In the meantime on April 17, 1968, Crane commenced an action against Air Brake and its directors charging solicitation of proxies through false and misleading statements in violation of §§ 14 and 10 of the Securities Exchange Act of 1934 (15 U.S.C. §§ 78n and 78j) and Rules 14a–9 and 10b–5 thereunder, and seeking solely injunctive relief. On May 6, 1968, Crane commenced a second action in which it charged that Standard and Blyth & Co., Inc., which was also named as a defendant, manipulated and rigged the price of Air Brake stock through certain transactions for the purpose of promoting the Standard-Air Brake merger and deterring tenders under Crane's exchange offer, and with unlawful solicitation of proxies, in violation of §§ 10 and 14 of the Exchange Act, Rules 10b–5, 10b–6 and Regulation 14A thereunder, and of state law and re-

questing relief which was exclusively equitable in nature, as follows:

"(i) Preliminarily and permanently enjoining defendants from, directly or indirectly, voting or causing to be voted any Air Brake stock at said shareholders' meeting.

"(ii) Preliminarily and permanently enjoining defendants from, directly or indirectly, soliciting any votes of Air Brake stockholders relating to the aforesaid meeting.

"(iii) Preliminarily and permanently enjoining Standard from consummating any merger with Air Brake on the basis of votes obtained as a result of said violations.

"(iv) Preliminarily and permanently enjoining Standard from consummating any merger with Air Brake unless and until full disclosure of all relevant facts is given to the Air Brake stockholders and such stockholders are given an adequate opportunity to act on such information.

"(v) Preliminarily and permanently enjoining defendants from, directly or indirectly, purchasing votes of Air Brake stockholders.

"(vi) Preliminarily and permanently enjoining defendants from, directly or indirectly, enforcing or seeking to enforce any existing understanding with respect to the voting of Air Brake stock.

"(vii) Preliminarily and permanently enjoining defendants from engaging in any manipulative practises or any acts in violation of the Act."

Neither complaint sought any damages.

Both actions were consolidated and on six days during the period from May 21 to June 3, 1968, Judge Ryan held hearings, described by the court as a "trial on the merits," see Rule 65(a) (2), upon Crane's application for injunctive relief. Most of the proof related to the charges that Standard's proxy material contained false and misleading statements (e. g., statements as to Standard's income and capital assets) and that Standard's purchases and sales of thousands of Air Brake shares constituted unlawful vote-buying and should have been disclosed in the proxy solicitation material. By an opinion dictated into the record on June 3, 1968, Judge Ryan denied injunctive relief and dismissed the complaint on the merits. Although most of his opinion dealt with the charges of illegal purchases of votes or proxies and misstatements in proxy solicitation material, he did conclude that defendants had acted in good faith and that no violation of federal securities law, or of state statutory or common law, had occurred. On appeal, his decision was reversed in part by the Court of Appeals, which found that Standard's sales and purchases of Air Brake stock on April 19 had constituted market manipulation in violation of § 9(a) (2) of the 1934 Securities Exchange Act, 15 U.S.C. § 78i(a) (2), and nondisclosure of material facts in violation of § 10(b) of that Act, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. 240.-10b–5, promulgated thereunder. The balance of Judge Ryan's opinion, dealing with alleged buying of votes and misleading statements in the proxy statement, was affirmed. The Court of Appeals remanded for a determination of the appropriate remedies by the District Court. Judge Ryan recused himself from further participation in the case, and it has been assigned to us for all purposes pursuant to General Rule 2 of this court.

Plaintiff's multifarious claims for money damages, elaborated for the first time in an eight-page answer to defendants' interrogatory dated May 21, 1970, can be summarized as follows: (1) the difference in value between Crane's 32% block of Air Brake stock, including the value of control, and the Standard shares which were received in exchange therefor after the merger of Air Brake into Standard, (2) similar damages with respect to Air Brake stock which Crane was prevented from acquiring as a result of Standard's alleged manipulation and deceit, (3) the value to Crane of control of Air Brake, (4) the loss which Crane allegedly suffered from the forced sale of its Air Brake stock, for antitrust

reasons, subsequent to the merger, and (5) punitive damages. Viewing the answer to the interrogatory as a preview of a motion to amend the complaint, Rule 15(a), F.R.Civ.P., which Crane may file in the future, we are called upon by Standard to determine whether, under the terms of the remand, Crane may without a jury trial recover damages for Standard's alleged manipulation under § 9(a) (2) and non-disclosure under § 10 (b).

Standard argues that regardless what disposition has been made by the court, sitting without a jury, of the claim for injunctive relief, it is entitled under the Seventh Amendment[1] and Rule 38(a), F.R.Civ.P.,[2] to a jury trial of any damage claim, including a jury trial of all liability issues presented by the pleadings upon such a claim, and that it cannot be deprived of this constitutional right by a piecemeal non-jury determination of equitable claims. Dairy Queen v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962); Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed. 2d 988 (1959). It further maintains that a damage claim should not be appended to the complaint at this late stage because that would deny Standard its right to a jury trial.

Crane has a three-pronged reply to this contention—first, that the mandate of the Court of Appeals mentioning damages as possibly appropriate relief forecloses inquiry into the jury trial issue; second, that a damage claim presented at this time can be heard and decided by the court as part of its "incidental," or "clean-up," equity jurisdiction; and third, that the undisputed facts entitle Crane to judgment as a matter of law, and hence the jury trial issue is academic, cf. Brady v. Southern R. Co., 320 U.S. 476, 64 S.Ct. 232, 88 L.Ed. 239 (1943).

Turning to the first of Crane's contentions, the direction of the Court of Appeals with respect to the remand of this case appears twice in its opinion:

> "The extent of the damage will have to be determined by the District Court, in fashioning an appropriate remedy, and the burden of proof thereon will be on Crane." (419 F.2d at 797)

> "We affirm the District Court's dismissal of the claim as to the Air Brake proxy statement; we reverse the judgment below dismissing the claim based upon market manipulation and deception, and remand for a further determination in the District Court of the appropriate remedies. Without limitation, these remedies may include damages, if any, prospective injunctive relief, as well as appropriate retrospective relief, notwithstanding the consummation of the merger." (419 F.2d at 803)

It is our duty to construe the foregoing mandate in the light of the background and circumstances leading up to it.[3] Sherwin v. Welch, 115 U.S.App. D.C. 328, 319 F.2d 729 (1963); Epstein

1. "AMENDMENT VII—CIVIL TRIALS
   "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law."

2. Rule 38(a), F.R.Civ.P.:
   "(a) *Right Preserved.* The right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States shall be preserved to the parties inviolate."

3. Although some appellate courts have freely granted a motion by a party to clarify the mandate, cf. Lauro v. United States, 163 F.2d 642 (2d Cir. 1947); Individual Drinking Cup Co. v. Public Service Cup Co., 262 F. 410 (2d Cir. 1919), a procedure which we suggested during oral argument of this motion on November 4, 1970, others have been unwilling to render advisory opinions on issues which may or may not arise upon remand, deferring consideration until such issues can be passed upon by the district court, Oliver v. United States, 118 U.S.App.D.C. 302, 335 F.2d 724, 726 n. 2 (1964), cert. denied, 379 U.S. 980, 85 S.Ct. 686, 13 L.Ed.2d 571 (1965); Epstein v. Goldstein, 110 F.2d 747 (2d Cir. 1940).

v. Goldstein, 110 F.2d 747, 748 (2d Cir. 1940).

> "Whether this would result in a judgment merely directing a return of the car, or in a judgment directing its return with an accounting for depreciation in value through the transferee's use, or in a money judgment for its value at the date of transfer or at the date of suit are questions that were not argued on the appeal and have never been decided by the trial judge. He must decide them. They are not properly before this court on this motion." (110 F.2d at 748)

Here the background reveals that no damages were claimed by Crane in any of its complaints and that there was but a single passing reference to damage in Crane's original brief as plaintiff-appellant (p. 86). After Standard had filed its answering briefs (which made no mention of damages), Crane in its reply brief made several incidental references to damages. Thus no issue as to damages was presented to the Court of Appeals and the question of whether Standard would be entitled to a jury trial if Crane should later amend its complaint to seek damages was neither briefed nor argued. Cf. Illinois Bell Tel. Co. v. Slattery, 102 F.2d 58, 64 (7th Cir.), cert. denied, 307 U.S. 648, 59 S.Ct. 1045, 83 L.Ed. 1527 (1939). Having in mind that the mandate is only decisive as to issues that were expressly or impliedly disposed of on appeal, Ex parte Union Steamboat Co., 178 U.S. 317, 319, 20 S.Ct. 904, 44 L.Ed. 1084 (1900); Paull v. Archer-Daniels-Midland Co., 313 F.2d 612 (8th Cir. 1963); and that one of the Court of Appeals' two references to damages (p. 803) tracks almost verbatim the closing lines of Crane's Reply Brief, we infer that the Court either assumed that no issue existed except as to the amount or was under the impression that an award of some incidental expenses might be required to render fully effective the equitable relief to which Crane was entitled.

It also seems axiomatic that where the language of a mandate permits it should be interpreted by us in accordance with the Constitution as construed by the Supreme Court, particularly with reference to matters that were not argued before the Court of Appeals. In the present case, for instance, we are confident that the Court of Appeals would not want us to award damages which we are prohibited by the Constitution from assessing without first granting to Standard a jury trial. Applying this principle of construction, we are convinced that if Crane had sought damages of the type referred to in its answer to Standard's interrogatory, Standard would be entitled under the Seventh Amendment, as construed by the Supreme Court in *Dairy Queen* and *Beacon Theatres*, to a jury trial of all genuine issues as to material facts before any damages could be awarded. A claim for damages would convert the action into a "suit at common law" as that language is used in the Seventh Amendment.

In *Beacon Theatres* the Supreme Court decided that where pleadings present both equitable and legal claims (in that case a claim for treble damages), the district court must grant a jury trial as to the issues underlying the legal claim, and it cannot, by first trying the common issues without a jury in connection with the equitable claims, deny either party its constitutional right to a jury trial of the damage claim, either on a theory of *res judicata* or collateral estoppel. Quoting from Scott v. Neely, 140 U.S. 106, 11 S.Ct. 712, 35 L.Ed. 358, the Court stated:

> "In the Federal courts this right [to a jury trial] cannot be dispensed with, except by the assent of the parties entitled to it; nor can it be impaired by any blending with a claim, properly cognizable at law, of a demand for equitable relief in aid of the legal action, or during its pendency." (359 U.S. at 510, 79 S.Ct. at 957)

These principles were reaffirmed by the Supreme Court in *Dairy Queen*:

> "The holding in *Beacon Theatres* was that where both legal and equitable is-

sues are presented in a single case, 'only under the most imperative circumstances, circumstances which in view of the flexible procedures of the Federal Rules we cannot now anticipate, can the right to a jury trial of legal issues be lost through prior determination of equitable claims.' [359 U.S. at 510–511, 79 S.Ct. at 957] * * * Consequently, in a case such as this where there cannot even be a contention of such 'imperative circumstances,' *Beacon Theatres* requires that any legal issues for which a trial by jury is timely and properly demanded be submitted to a jury." (369 U.S. at 472–473, 82 S.Ct. at 897).

■ The fact that there was a "trial of the action on the merits" before Judge Ryan pursuant to Rule 65(a) (2) in connection with Crane's demand for equitable relief does not work a forfeiture of Standard's Constitutional right to a jury trial of any damage claim that might subsequently be asserted. Rule 65(a) (2) expressly provides that "the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application [for preliminary injunctive relief]," which was the procedure followed by Judge Ryan. That Rule goes on to state, however,

> "This subdivision (a) (2) shall be so construed and applied as to save to the parties any rights they may have to trial by jury."

The latter provision was in recognition of Congress' direction contained in Title 28 U.S.C. § 2072 to the effect that the Rules of Civil Procedure "shall preserve the right of trial by jury as at common law and as declared by the Seventh Amendment to the Constitution." Any doubt about the matter is set at rest by the following Advisory Committee Note to Rule 65(a) (2), which was adopted in 1966:

> "Since an application for a preliminary injunction may be made in an action in which, with respect to all or part of the merits, there is a right

to trial by jury, it is appropriate to add the caution appearing in the last sentence of the subdivision. In such a case the jury will have to hear all the evidence bearing on its verdict, even if some part of the evidence has already been heard by the judge alone on the application for the preliminary injunction.

> "The subdivision is believed to reflect the substance of the best current practice and introduces no novel conception."

■ Thus it is immaterial for purposes of determining Standard's right to a jury trial whether the damage claim is asserted before or after a hearing or trial of the equitable claim. Although Crane may have faced problems prior to dismissal of its equitable claim in establishing its standing to claim damages it is not uncommon (in fact it is usual) for a plaintiff in Crane's position to assert a damage claim in the alternative. Cf. *Mutual Shares Corp. v. Genesco, Inc.,* 384 F.2d 540, 543 (2d Cir. 1967). Furthermore, Crane was not precluded, immediately upon the filing of Judge Ryan's decision, from amending its complaint to seek damages, Rule 15(a), F.R.Civ.P., or from seeking a stay or an expedited appeal. If this procedure had been followed, Standard could at least have asserted its Constitutional right to a jury trial. As it was, in the absence of any such damage claim, Standard could hardly be deemed to have waived this right by reason of the plaintiff's failure to state a legal claim. *Connolly v. United States,* 149 F.2d 666 (9th Cir. 1945). To hold that at the plaintiff's option a defendant's rights could thus be waived or subsumed by the plaintiff's making post-hearing amendments to assert legal claims for damages would put a premium on skillful, tactical maneuvering on the part of a plaintiff intent upon avoiding a jury trial.

■ Only on a literal-minded reading of the Court of Appeals' opinion, coupled with a blithe ignorance of *Dairy*

*Queen* and *Beacon Theatres,* could one reach the conclusion that in indicating what forms of relief might be "appropriate," the Court was, without briefing, argument, or elaboration in its opinion, granting Crane carte blanche to obtain on remand any and all forms of legal relief without a jury trial. We decline to give the opinion such a literal-minded reading or to disregard the clear import of *Dairy Queen* and *Beacon Theatres.* We think it more reasonable to assume that, if damages are found to be an appropriate remedy, the Constitution and the Federal Rules require us to afford Standard a jury trial of the legal issues. Richland v. Crandall, 259 F.Supp. 274 (S.D.N.Y. 1966).

Nor can we credit Crane's second reason for denying that the Seventh Amendment requires a jury trial in the present case—the "incidental" power of an equity court to award damages. The passage Crane cites from Wirgert v. First National Bank, 223 U.S. 670, 672, 32 S.Ct. 391, 56 L.Ed. 605 (1912), which was dictum even in that case, must be viewed in the light of the clear and unusually apt direction later made in Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 507, 79 S.Ct. 948:

> "[I]t is immaterial, * * * that before the Federal Rules and the Declaratory Judgment Act were passed, courts of equity, exercising a jurisdiction separate from courts of law, were, in some cases, allowed to enjoin subsequent legal actions between the same parties involving the same controversy. This was because the subsequent legal action, though providing an opportunity to try the case to a jury, might not protect the right of the equity plaintiff to a fair and orderly adjudication of the controversy. * * * Under such circumstances the legal remedy could quite naturally be deemed inadequate. Inadequacy of remedy and irreparable harm are practical terms, however. As such their existence today must be determined, not by precedents decided under discarded procedures, but in the light of the remedies now made available by the Declaratory Judgment Act and the Federal Rules." (359 U.S. 507, 79 S.Ct. 955 [footnote omitted]).

Another case which Crane relies on, Porter v. Warner Holding Co., 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946), not only involved an issue which is different from that presented here —i. e., the jurisdiction of a United States District Court to hear claims for restitution of excess rents paid in violation of war-time rent control—but the Court noted specifically that "restitution, which lies within that equitable jurisdiction * * * differs greatly from * * * damages and penalties * * *." (328 U.S. 402, 66 S.Ct. 1091). In addition to dealing with an issue not presented here, *Porter* was decided before *Beacon Theatres* and *Dairy Queen.* We are thus constrained to follow the express command of *Dairy Queen:*

> "At the outset, we may dispose of one of the grounds upon which the trial court acted in striking the demand for trial by jury—that based upon the view that the right to trial by jury may be lost as to legal issues where those issues are characterized as 'incidental' to equitable issues— for our previous decisions make it plain that no such rule may be applied in the federal courts." (369 U.S. at 470, 82 S.Ct. at 896)

The above language is not affected by Katchen v. Landy, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), which upheld the summary powers of the trustee in bankruptcy to annul and recover a preference without a jury trial in a summary (as distinguished from a plenary) proceeding, in view of earlier Supreme Court decisions that the Seventh Amendment's reference to "suits at common law" did not extend to summary proceedings in bankruptcy. In *Katchen,* the Court itself dismissed a seeming conflict with *Dairy Queen* and *Beacon Theatres* in

these words: "In neither *Beacon Theatres* nor *Dairy Queen* was there involved a specific statutory scheme contemplating the prompt trial of a disputed claim without the intervention of a jury." 382 U.S. 339, 86 S.Ct. 478. We doubt that the clear command of *Beacon Theatres* and *Dairy Queen* is undercut either by *Katchen* or by the one recent case which Crane cites for the "incidental" power of an equity judge to award damages, Railex Corp. v. Joseph Guss & Sons, Inc., 40 F.R.D. 119 (D.D.C.1966), which, relying heavily on *Katchen,* held that a money damages claim was "incidental," 40 F.R.D. 123, to a patent infringement suit which was deemed essentially equitable, and thus that such damages could be awarded without a jury. Even following *Railex,* however, we note that on the facts of this case the damage claim is far from "incidental," as Crane's eight-page answer to defendants' interrogatory, asserting damages running into millions of dollars, demonstrates.

Turning to the third ground urged by Crane, we must decide whether or not there remain disputed issues of material fact which a jury could decide; in effect, would Crane be entitled to summary judgment? Cf. Newmark v. RKO General, Inc., 294 F.Supp. 358 (S.D.N.Y.1968) (summary judgment for plaintiff granted on issue of liability in action to recover insider's short-swing profits). Having carefully reviewed the facts and the two prior opinions in this case, we cannot conclude that there is no issue of material fact, the only situation in which Crane would be entitled to judgment as a matter of law.

We note first that the hearings before Judge Ryan, and his decision thereafter, were devoted principally to Crane's contentions that Standard was engaged in buying votes and that the Air Brake proxy statement included material misstatements and omissions. As the Court of Appeals noted, Judge Ryan "denied relief with no extensive treatment of the market manipulation and fraud claims involving sections 9 (a) (2) and 10(b) of the Act," (see 419 F.2d 792), stating that Standard purchased Air Brake stock "solely * * * in order to vote it in favor of the merger" and that he found "nothing illegal about it."

Faced with a decision containing such summary findings on the market manipulation claims, the Court of Appeals indicated clearly in Judge Smith's opinion that, for purposes of equity jurisdiction, it would have reached the contrary conclusion and found the essential elements of a violation of § 9(a) (2) and § 10(b) on the basis of Standard's buying huge amounts of Air Brake stock at $50 in the open market and on the same day making substantial off-market sales at about $44 to friendly institutional investors. This language should not be construed, however, to read that as a matter of law no reasonable jury could have found that Standard had not violated the above sections of the securities laws. As the Court of Appeals stated, 419 F.2d 794, manipulative motive and willfulness are required for a finding that § 9(a) (2) has been violated. In the absence of specific findings by Judge Ryan with respect to the claims based on §§ 9(a) (2) and 10 (b), which would have been upset only if found by the Court of Appeals to be "clearly erroneous," Rule 52(a), F.R. Civ.P., the Court of Appeals concluded that on the record before it, it would have inferred the requisite motive and intent "from the circumstances of the case," 419 F.2d 794. This is a far cry from finding that as a matter of law motive, intent and willfulness *must* be found on this record or that it would reject a jury finding to the contrary and order that a Rule 50 judgment for Crane be entered notwithstanding the jury's verdict. In the first place the record upon an expedited and consolidated trial pursuant to Rule 65(a) (2) is rarely as complete as that in a full scale jury trial, usually held at a later date, since each party in a suit for injunctive relief is usually called

upon to present its case on short notice and in abbreviated form. Furthermore, as the Supreme Court has noted:

"It is not necessary in a suit for equitable or prophylactic relief to establish all the elements required in a suit for monetary damages." SEC v. Capital Gains Research Bureau, Inc., 375 U.S. 180, 193, 84 S.Ct. 275, 283, 11 L.Ed.2d 237 (1963)

Equally important in the present case is the existence in the record of testimony by Standard's management that its purchases of Air Brake stock, including those forming the basis of the Court of Appeals' opinion, were made in good faith. The two officers principally responsible for Standard's purchases, Paul Devlin, Chairman of the Board of Blyth, and Laurence C. Ward, Executive Vice President of Standard, testified that the April 19 purchases of 170,200 Air Brake shares were made solely for the purpose of acquiring shares to be voted in favor of the Standard-Air Brake merger. The usual premium price had to be paid in the "cash market" in order to obtain delivery before the April 23d record cut-off date, which could not otherwise be met. The 170,200 shares, however, if held by Standard, would have increased its holdings beyond the 10% mark and thus have subjected it to restrictions applicable to insiders and control persons. Standard, therefore, sold 120,000 shares to institutional investors (IDS and Dillon, Read) whom it believed to be sympathetic to its merger bid.

Devlin denied under oath any intent to run the price of Air Brake shares up on the market in order to block Crane's tender offer. Corroborative oral testimony tending to negate the existence of such an intent was received. Although Judge Ryan did not make any specific findings on these issues, he did indicate his belief that Standard acted in good faith. Crane's counsel went even further and interpreted his decision as a finding that Standard had not acted with wrongful motive or intent. In its later motion asking Judge Ryan to recuse himself, counsel, in an affidavit dated May 12, 1970, stated:

"Thus the Court of Appeals has differed from this Court on three fundamentally important factors in this case: the good faith and the integrity of the defendants, the wrongfulness of their motives and intent, and the deliberateness of the harm caused Crane." (Pomerantz Aff. of May 12, 1970, p. 6).

Thus the record reveals a genuine issue as to a material fact—the intent, motive and willfulness of Standard's management. Upon such a record, incomplete at best, we doubt that the Court of Appeals would hold that summary judgment in favor of Crane is warranted or that a court is entitled to substitute its inferences from the cold printed record for the findings of a jury made after observing the witnesses and appraising their credibility. We have repeatedly been cautioned that where an issue is presented as to intent or motive, a party is entitled to have the issue decided by a jury, and that summary judgment is inappropriate. Arnstein v. Porter, 154 F.2d 464 (2d Cir. 1946) (Frank, J.); Kletschka v. Driver, 411 F.2d 436, 445 (2d Cir. 1969); Union Insurance Society of Canton, Ltd. v. William Gluckin & Co., 353 F.2d 946, 951 (2d Cir. 1965); 6 Moore's Federal Practice ¶ 56.15 [4] at p. 2367.

"Summary judgment was, then, proper if indubitably defendant did not have access to plaintiff's compositions [this was a copyright infringement action]. Plainly that presents an issue of fact. On that issue, the district judge, *who heard no oral testimony*, had before him the depositions of plaintiff and defendant. The judge characterized plaintiff's story as 'fantastic'; and, in the light of the references in his opinion to defendant's deposition, the judge obviously

accepted defendant's denial of access and copying. *Although part of plaintiff's testimony on deposition* (as to 'stooges' and the like) *does seem 'fantastic,'* yet plaintiff's credibility, even as to those improbabilities, should be left to the jury." Arnstein v. Porter, 154 F.2d 464 at 469 (2d Cir. 1946) (emphasis added).

A recent opinion by Judge Smith (who was the author of the Court of Appeals' opinion in the present case) in Dolgow v. Anderson, 438 F.2d 825 (2d Cir. 1970), reaffirmed the foregoing basic principle under circumstances similar to those before us. The Court in *Dolgow* reversed the district court's granting of summary judgment for defendants in a case in which plaintiffs had alleged, *inter alia,* that defendants' sales of stock had been motivated by non-disclosed inside information. Quoting from Judge Frank's opinion in Doehler Metal Furniture Co. v. United States, 149 F.2d 130, 135 (2d Cir. 1945), Judge Smith wrote:

"* * * trial judges should exercise great care in granting motions for summary judgment. A litigant has a right to a trial where there is the slightest doubt as to the facts, and a denial of that right is reviewable; but refusal to grant a summary judgment is not reviewable. Such a judgment, wisely used, is a praiseworthy time-saving device. But, although prompt dispatch of judicial business is a virtue, it is neither the sole nor the primary purpose for which courts have been established. Denial of a trial on disputed facts is worse than delay. The district courts would do well to note that time has often been lost by reversals of summary judgments improperly entered."

For the same reasons we conclude that Standard would clearly be entitled to a jury trial of the issues presented by Crane's claim for damages based on alleged violation of § 9(a) (2). As we view it the Court of Appeals did not hold that a jury, after observing the witnesses and appraising their credibility, would be precluded from deciding issues of intent, motive and willfulness contrary to the inferences drawn by it, for the purposes of equitable relief, without benefit of such personal observation of the witnesses. Nor do we believe that the Court would necessarily set aside a contrary verdict. Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 35, 64 S.Ct. 409, 88 L.Ed. 520 (1944).

■ While the issue of whether Standard is entitled to a jury trial on the alleged violations of § 10(b) and Rule 10b–5 presents a closer question, our decision as to it is no different. Although we agree with Crane that a specific intent analogous to that found in common law fraud is not required for a violation of this Rule, see Globus v. Law Research Service, Inc., 418 F.2d 1276, 1290–1291 (2d Cir. 1969) ; SEC v. Texas Gulf Sulfur, 401 F.2d 833, 854–856 (2d Cir. 1968), it appears that "some form of the traditional scienter requirement" is preserved, 401 F.2d 855. In view of the current status of doctrinal development in this area, summary judgment is not warranted, cf. Astor v. Texas Gulf Sulfur Co., 306 F.Supp. 1333, 1343–1344 (S.D.N.Y.1969). In addition, we note, as did the Court of Appeals, that Crane's claim under Rule 10b–5 is based on "Standard's failure to disclose its *manipulation,*" 419 F.2d 795 (emphasis added). Since there cannot be an unlawful "manipulation" without proof of intent and willfulness we doubt that a person could be found to have failed to disclose his own "manipulation" without similar proof. We conclude, therefore, that the jury, which must determine whether or not there has been manipulation in violation of § 9(a) (2), must consider the non-disclosure claim as well.

With respect to Crane's § 9(a) (2) and § 10(b) claims against Blyth, our interpretation of the Court of Appeals' mandate, as outlined above, is equally applicable.

Accordingly, we grant Standard's motion for an order defining and limiting the issues to the extent of striking as

a non-jury issue the assessment of any money damages other than such amounts as may be required to render equitable relief effective. Crane has not moved, pursuant to Rule 15, F.R.Civ.P., to amend its complaint to demand damages. Should such a motion be made and granted, Standard's time for demanding a jury trial would run upon service of the amended complaint. See Rule 38(b), F.R.Civ.P.

It is so ordered.