**AMERICAN STANDARD, INC.,**
**Plaintiff,**

v.

**CRANE CO., Defendant and Third-**
**Party Plaintiff,**

v.

**Edward J. HANLEY et al., Third-**
**Party Defendants,**

**and Two Other Consolidated Actions.**

**Nos. 68 Civ. 2461, 68 Civ. 2389 and**
**68 Civ. 2446.**

United States District Court,
S. D. New York.

July 6, 1973.

Sullivan & Cromwell, New York City, for plaintiff; David W. Peck, Edward W. Keane, Robert M. Osgood, New York City, of counsel.

Lord, Day & Lord, New York City, for defendant and third-party plaintiff; Michael J. Murphy, John W. Castles, Norman Pacun, New York City, of counsel.

Pomerantz, Levy, Haudek & Block, New York City, for defendant and third-party plaintiff; Abraham Pomerantz, William E. Haudek, New York City, of counsel.

Cahill, Gordon, Sonnett, Reindel & Ohl, New York City, for defendant Blyth & Co., Inc. in 68 Civ. 1845; Leonard A. Spivak, New York City, of counsel.

## OPINION

ROBERT J. WARD, District Judge.

This motion by plaintiff American Standard, Inc. ("Standard") to dismiss defendant Crane Co.'s ("Crane") counterclaim for damages resulting from alleged market manipulation of Westinghouse Air Brake Co. ("Air Brake") shares by Standard, arises out of the following events and the litigation they produced.[1] In June, 1967, Crane determined that Air Brake would be an attractive acquisition and began buying Air Brake stock on the open market. After purchasing a substantial number of shares, Crane proposed a merger of Air Brake into Crane. Air Brake rejected the proposal and resisted subsequent advances by Crane. In fact, Air Brake entered into negotiations with Standard, a major competitor of Crane, to effect a merger of Air Brake into Standard.

On March 4, 1968, Air Brake and Standard agreed on the proposed merger. Stockholder approval was to be sought on May 16, 1968. Nevertheless, Crane continued to purchase Air Brake shares and announced on April 6, 1968, a tender offer for all of Air Brake's outstanding shares, which was to expire on April 19, 1968. Air Brake stockholders were offered Crane subordinated debentures valued at approximately $50 for each share of Air Brake.

On April 19, 1968, Standard purchased 170,000 shares of Air Brake on the open market at an average price of $49.50 and sold 100,000 shares off the market and 20,000 shares on the market at an average price of $44.50 for a total loss of over $500,000. The Second Circuit determined that the result of these transactions by Standard

. . . was to represent to the public, whose primary source of information is the tape, that there was a great demand for Air Brake at an increased value. It is reasonable to conclude that many Air Brake stockholders who might otherwise have chosen to tender to Crane chose not to do so because their own holdings in Air Brake looked better as the price went up.

. . . . . .

Standard's extraordinary buying here, coupled with its large secret sales off the market, inevitably distorted the market picture and deceived . . . the Air Brake shareholders. Crane Co. v. Westinghouse Air Brake Co., 419 F.2d 787, 792–793 (2d Cir. 1969), cert. denied, 400 U.S. 822, 91 S.Ct. 41, 27 L.Ed.2d 50 (1970).

The merger was approved by the stockholders and became effective on June 7, 1968. Pursuant to the merger, Crane's Air Brake stock was converted into shares of a new issue of Standard convertible preferred stock. On June 13, 1968, Crane disposed of most of its stock to avoid violating certain antitrust laws.

*The Fraud Action*—Prior to the merger, Crane brought an action against Air Brake to enjoin Air Brake from giving effect to proxies solicited in support of the merger. Crane also brought an action against Standard and Blyth & Co., Inc., alleging that Blyth, on behalf of Standard, manipulated the price of Air

---

1. *See*, Crane Co. v. Westinghouse Air Brake Co., 419 F.2d 787 (2d Cir. 1969), cert. denied, 400 U.S. 822, 91 S.Ct. 41, 27 L.Ed.2d 50 (1970); Crane Co. v. American Standard, 326 F.Supp. 766 (S.D.N.Y.1971); American Standard v. Crane Co., 346 F.Supp. 1153 (S.D.N.Y. 1972).

Brake stock. In the latter action Crane also requested exclusively equitable relief. The actions were consolidated and tried before Judge Sylvester J. Ryan from May 21 to June 3, 1968. Judge Ryan denied injunctive relief and dismissed the complaint on the merits. On appeal the Second Circuit reversed Judge Ryan in part, holding that:

> Standard's action here . . . in concealing from the public—and in particular from the Air Brake stockholders—the true situation as to the market it was making in Air Brake stock resulted in violations of sections 9(a)(2) and 10(b) of the [Securities Exchange Act of 1934, 15 U.S.C. § 78i, j(b)]. *Id.* at 793.

The Court remanded the case for a determination of the appropriate remedies.[2]

On remand, Judge Mansfield, then a District Judge, was asked to define and limit the issues and to strike Crane's claim for money damages. Noting that neither of Crane's complaints had sought money damages, Judge Mansfield held that

> [T]he fact that there was a "trial of the action on the merits" before Judge Ryan pursuant to Rule 65(a)(2) in connection with Crane's demand for equitable relief does not work a forfeiture of Standard's Constitutional right to a jury trial of any damage claim that might subsequently be asserted. Crane Co. v. American Standard, 326 F.Supp. 766, 772 (S.D.N.Y. 1971).

In addition, Judge Mansfield concluded that the Second Circuit did not direct that money damages be awarded Crane without a jury trial:

> Only on a literal-minded reading of the Court of Appeals' opinion . . . could one reach the conclusion that in indicating what forms of relief might be "appropriate," the Court was, without briefing, argument, or elaboration in its opinion, granting Crane carte blanche to obtain on remand any and all forms of legal relief without a jury trial. We decline to give the opinion such a literal-minded reading. . . . We think it more reasonable to assume that, if damages are found to be an appropriate remedy, the Constitution and the Federal Rules require us to afford Standard a jury trial of the legal issues. *Id.* at 772–773.

Judge Mansfield also concluded that the general equity powers of the Court did not allow him to deny Standard its right to a jury trial, and that Crane was not entitled to summary judgment on its market manipulation claims based on the findings of the Court of Appeals:

> "Faced with a decision containing such summary findings on the market manipulation claims, the Court of Appeals indicated clearly in Judge Smith's opinion that, for purposes of equity jurisdiction, it would have reached the contrary conclusion and found the essential elements of a violation of § 9(a)(2) and § 10(b) on the basis of Standard's buying huge amounts of Air Brake stock at $50 in the open market and on the same day making substantial off-market sales at about $44 to friendly institutional

2. The Second Circuit's mandate as set forth by Judge Mansfield is as follows
   "The extent of the damage will have to be determined by the District Court, in fashioning an appropriate remedy, and the burden of proof thereon will be on Crane." (419 F.2d at 797)
   "We affirm the District Court's dismissal of the claim as to the Air Brake proxy statement; we reverse the judgment below dismissing the claim based upon market manipulation and deception, and remand for a further determination in the District Court of the appropriate remedies. Without limitation, these remedies may include damages, if any, prospective injunctive relief, as well as appropriate retrospective relief, notwithstanding the consummation of the merger." (419 F.2d at 803)
   326 F.Supp. at 770.

investors. This language should not be construed, however, to read that as a matter of law no reasonable jury could have found that Standard had not violated the above sections of the securities laws. . . . In the absence of specific findings by Judge Ryan with respect to the claims based on §§ 9(a)(2) and 10(b), which would have been upset only if found by the Court of Appeals to be 'clearly erroneous' Rule 52(a), F.R.Civ.P., the Court of Appeals concluded that on the record before it, it would have inferred the requisite motive and intent 'from the circumstances of the case,' 419 F.2d 794. This is a far cry from finding that as a matter of law motive, intent and willfulness must be found on this record or that it would reject a jury finding to the contrary.

> . . . . . .

"As we view it the Court of Appeals did not hold that a jury, after observing the witnesses and appraising their credibility, would be precluded from deciding issues of intent, motive and willfulness contrary to the inferences drawn by it, for the purposes of equitable relief, without benefit of such personal observation of the witnesses." *Id.* at 774, 776.

Judge Mansfield concluded his opinion as follows:

> Crane has not moved, pursuant to Rule 15, F.R.Civ.P., to amend its complaint to demand damages. Should such a motion be made and granted, Standard's time for demanding a jury trial would run upon service of the amended complaint. See Rule 38(b), F.R.Civ.P. *Id.* at 777.

Believing that Judge Mansfield's opinion was, in effect, a "reversal" of the Court of Appeals, Crane brought a mandamus proceeding against him in that Court. The application was denied without opinion. Crane then asked the Court of Appeals to clarify its mandate. This application was also denied.

Crane next followed Judge Mansfield's suggestion and moved to amend and supplement its fraud complaint by including a damage claim. In addition, Crane moved for a "reconsideration" of Judge Mansfield's rulings by the late Judge Edward C. McLean, to whom the action was re-assigned when Judge Mansfield was elevated to the Court of Appeals. Upon Judge McLean's untimely death, and before he had a chance to decide these motions, the action was assigned to me for all purposes.[3]

*The § 16(b) Action*—As noted above, for antitrust reasons Crane was forced to sell most of its Standard shares on June 13, 1968. Within a matter of days Standard sued Crane under § 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b), to recover short swing profits made by Crane in its dealings in Air Brake stock.[4] Judge Lasker granted summary judgment to Standard but did not consider Crane's counterclaim based on Rule 10(b)-5, 17 C.F.R. § 240.-10(b)-5, which Crane concedes alleged Standard's "fraudulent manipulations substantially as the Court of Appeals subsequently found them."

I. The threshold issue to be determined by this Court is whether this counterclaim should be barred on the basis of splitting of one cause of action. Standard argues strenuously that

---

3. Since Standard admits that the "grounds for dismissal of the counterclaim are exactly the same as the grounds set forth" for opposition to the motion for leave to amend the complaint, Crane's motion to amend its complaint, and its motion for "reconsideration," both of which remain undecided, appear to be mooted upon the decision of the instant motion by Standard to dismiss Crane's counterclaim.

4. Two former Air Brake stockholders also brought similar actions on behalf of Air Brake or its former stockholders. These actions were consolidated with the instant action. The three plaintiffs filed one amended complaint.

Crane's cause of action for market manipulation has been litigated, and all that is left is a determination of the proper remedy, which cannot include damages. Standard reasons that since a cause of action once adjudicated cannot be relitigated, the counterclaim here must be dismissed.

■ ■ In an unrelated case, the Court of Appeals has recently spoken on the issue of splitting of causes of action:

> It can be strongly argued that plaintiff had an obligation . . . to consolidate into a single proceeding all of his causes of action and to raise in one complaint all the claims which he could reasonably foresee could arise out of the same transaction. Armstrong v. White Plains Council of Girl Scouts, [30 A.D.2d 818,] 292 N.Y.S.2d 813, aff'd, 24 N.Y.2d 748, 299 N.Y.S. 2d 846, [247 N.E.2d 662] (1968). Courts should not permit the splitting of causes of action when the result of doing so could result in vexatious litigation for the defendant and an undue clogging of the dockets of the court. Plaintiff's excuse here that he could not have raised the late-pleaded fraud claim earlier is not persuasive. Ritchie v. Landau, Docket No. 72–1672, 475 F.2d 151, at 156, n. 5 (2d Cir. 1973).

Nevertheless, in the context of the present litigation, the Court does not believe that permitting Crane to assert this counterclaim results in "vexatious litigation" for Standard and "an undue clogging of the dockets of the court." The Court does not view this action as the type which the doctrines of collateral estoppel, *res judicata* and splitting were designed to prevent.[5]

As noted above, Crane's fraud action against Standard alleging market manipulation was brought prior to the merger of Standard and Air Brake. The Court is constrained to find that Crane could not have asserted its damage claim at that time and thus cannot be barred from asserting it now. Burns Bros. v. Central R. R. of New Jersey, 202 F.2d 910 (2d Cir. 1953).

■ It is clear that a claim under Rule 10(b)–5, at least as to damages, may be asserted only by a purchaser or seller of securities. Haberman v. Murchison, 468 F.2d 1305, 1311 (2d Cir. 1972); Greenstein v. Paul, 400 F.2d 580 (2d Cir. 1968); Mutual Shares Corp. v. Genesco, 384 F.2d 540 (2d Cir. 1967). At the time it commenced its fraud action, Crane had not sold or purchased any securities as a result of Standard's market manipulations. In fact, by June 13, 1968, the day Crane became a "forced seller of the newly issued Standard convertible preferred" shares, 419 F.2d at 798, the fraud action had already been dismissed. Thus, Crane could not have asserted its damage claim prior to June 13, 1968. In addition, it appears that Crane was not damaged by Standard's actions until the merger was consummated on June 7, 1968, two days after the judgment of dismissal.

Standard points out that Judge Mansfield noted that Crane could have asserted a damage claim in its fraud action "in the alternative." 326 F.Supp. at 772. Nevertheless, the Court agrees with Crane that its damage claim would have been dismissed by Judge Ryan at

---

5. These doctrines, designed to prevent "repetitive litigation," Zdanok v. Glidden Co., 327 F.2d 944, 955 (2d Cir.), cert. denied, 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964), should be employed when "litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again." *Id.* quoting from Lummus Co. v. Commonwealth Oil Refining Co., 297 F.2d 80, 89 (2d Cir. 1961), cert. denied, Dawson v. Lummus Co., 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed. 2d 524 (1962). That is not the case here.

trial after opening remarks by counsel revealed that Crane was neither a purchaser nor a seller of securities.

Judge Mansfield also indicated that Crane could have amended its complaint to seek damages immediately upon the filing of Judge Ryan's decision. Standard argues that Crane could have moved to amend its complaint even earlier— when it became obvious that the merger was going to be approved. In the interests of justice and fairness to all parties, the obligation of a party to "raise in one complaint all the claims which he could reasonably foresee could arise out of the same transaction," Ritchie v. Landau, Docket No. 72–1672, 475 F.2d at 156, n. 5, should not be extended to bar Crane under the circumstances here. As the Court of Appeals noted, Crane's market manipulation claims should have been successful before Judge Ryan. The merger should have been enjoined and Crane should not have had to seek damages. It would be grossly unfair to bar Crane from seeking damages which resulted partly from an incorrect decision of this Court, because Crane did not anticipate the adverse decision or act immediately after the decision to amend its complaint. This is certainly not the "vexatious litigation" which the comment in *Ritchie* sought to prevent. Also, it is far from clear whether Judge Ryan would have allowed Crane to amend its complaint after his adverse decision on the question of market manipulation.

In addition, Judge Mansfield's comments were directed to whether Standard had waived its right to a jury trial since there had already been a trial of the action on the merits before Judge Ryan pursuant to Rule 65(a)(2), Fed.R. Civ.P. Judge Mansfield noted that the Rule saves the parties "any rights they

may have to trial by jury," and that it was "immaterial . . . whether the damage claim is asserted before or after a hearing or trial of the equitable claim," for purposes of determining Standard's right to a jury trial. 326 F. Supp. at 772. Judge Mansfield then concluded that since a damage claim could have been made by Crane, albeit after judgment of dismissal, Standard had not waived its right to a jury trial. He specifically did not find that Crane should have made such a claim or forever be barred from doing so.

■ Standard also insists that the Court of Appeals finding that Crane had standing as a forced seller related back to the inception of its action and included standing to seek damages. While an interesting and novel argument, it cannot be successful here. Even assuming the Court of Appeals intended to find that potential "forced sellers" have standing to assert a claim for damages before the forced sale, the decision could not be binding on Crane. At the time Judge Ryan decided the fraud action, this was clearly not the law.[6] Such a holding should not apply retroactively to Crane to bar it from asserting its damage claim here.

At any rate, the Court does not believe that the Second Circuit had such an intention. Its language appears to recognize a distinction between the standing necessary to seek equitable and legal relief.

In Mutual Shares Corp. v. Genesco, Inc., 384 F.2d 540 (2d Cir. 1967), we held that shareholders of a corporation had standing under Rule 10b–5 to obtain *injunctive* relief to prevent controlling persons from depressing the price of the corporation's stock by market manipulation, *even though the complaining shareholders had pur-*

6. Mutual Shares Corp. v. Genesco, 384 F.2d 540 (2d Cir. 1967). The decision of the Court in Iroquois Industries v. Syracuse China Corp., 417 F.2d 963 (2d Cir. 1969), cert. denied, 399 U.S. 909, 90

S.Ct. 2199, 26 L.Ed.2d 561 (1970), which arguably might support Standard, also was decided long after Crane's fraud action was decided by Judge Ryan.

*chased their shares prior to the manipulation and had not yet sold them. . . . In damage actions, this court in Symington Wayne Corp. v. Dresser Industries, Inc., 383 F.2d 840, 842 (2d Cir. 1967), referred to (other) . . . decisions . . . as having "expressly left undecided the question whether one who is neither a purchaser nor a seller can attack a transaction under Rule 10b–5." 419 F.2d at 797–798 (emphasis added).* Apparently, the Court determined only that at the time of the writing of its decision Crane had standing to assert a damage claim because it had by that time become a forced seller. 419 F.2d at 798.

II. Having determined that the counterclaim should not be dismissed, certain other issues arise which must be considered.

The parties disagree as to whether Crane's counterclaim is subject to jury determination. Standard concedes that no jury demand was specifically directed to the counterclaim, but argues that no such demand was necessary because a general jury demand had been interposed, albeit by another plaintiff. Crane contends that Standard has waived its right to trial by jury citing Rule 38(d), Fed.R.Civ.P.[7]

After the sale of the Standard shares by Crane, an Air Brake stockholder, Melvin Kritzler, commenced an action against Air Brake, Standard and Crane, demanding recovery of Crane's short swing profits. Kritzler demanded a jury trial. Shortly thereafter Standard commenced its Section 16(b) action. After a series of amended pleadings and motions and the inception of a third action on the same theory by another former Air Brake stockholder, Judge McLean consolidated all of the actions, and ordered that an amended complaint be served containing one count on behalf of Standard and another on behalf of the two stockholders. Judge McLean's order did not discuss the jury issue. The amended complaint was served, and Crane's answer to it asserted for the first time the "counterclaim, defense and setoff" which is the subject of this motion. Standard's reply, served almost eight months before the Court of Appeals' decision, raised the defense of *res judicata.*

Standard relies on Kritzler's jury demand as making the entire action a jury action. Crane, however, contends that its counterclaim is directed only against Standard, and that Kritzler's jury demand affects only the issues between him and Crane and between him and Standard. Furthermore, Crane argues that consolidation does not entitle Standard to rely on Kritzler's original jury demand.

■ Although consolidation does not merge separate suits into one cause of action, MacAlister v. Guterma, 263 F.2d 65, 68 (2d Cir. 1958), the Court agrees with Standard that the purpose of Judge McLean's order was to permit the separate actions to be tried together. Because of Kritzler's demand, all of the consolidated actions should properly proceed to trial by jury. *See*, J. Moore, Federal Practice, ¶ 38.45 at 344.1–344.2 (2d Ed. 1971). Crane's counterclaim arises out of the same transactions as the § 16(b) claims of plaintiffs, and is termed by Crane a "defense" and "setoff" to the claims of Kritzler as well as the claims of Standard.

■ Under the circumstances here the Court is reluctant to find that Standard has waived its right to a jury trial. When doubt exists a Court should not find that a trial by jury has been

---

7. Rule 38(d) provides:
   The failure of a party to serve a demand as required by this rule and to file it as required by Rule 5(d) constitutes a waiver by him of trial by jury. A demand for trial by jury made as herein provided may not be withdrawn without the consent of the parties.

waived. Aetna Ins. Co. v. Kennedy, 301 U.S. 389, 393, 57 S.Ct. 809, 81 L.Ed. 1177 (1937); Heyman v. Kline, 456 F.2d 123, 129 (2d Cir.), cert. denied, 409 U.S. 847, 93 S.Ct. 53, 34 L.Ed.2d 88 (1972).[8] In addition, as noted previously, at the time Standard replied to Crane's counterclaim, the Court of Appeals had not yet reversed Judge Ryan. Standard could not have anticipated that a jury demand would be necessary because it reasonably believed that the doctrine of *res judicata* applied and barred the counterclaim.

Finally, the Court has already quoted extensively from Judge Mansfield's decision which concluded that damages could not be awarded Crane absent a jury determination of liability on the part of Standard. The Court is mindful that if it were to find that a jury trial of the counterclaim has been waived by Standard, Judge Mansfield's decision would be circumvented. The Court has indicated its belief that justice is served by allowing Crane to assert its counterclaim, although technically it could have pleaded damages in the alternative in the fraud action. By the same token, justice is served by discounting an overly technical argument that trial by jury has been waived.[9]

Thus, a jury trial of Crane's counterclaim alleging market manipulation will be necessary to terminate the five years of litigation involving these parties. At trial the Court will abide by Judge Mansfield's determination that a jury is not precluded from determining whether Standard is liable for damages under the securities laws. See quotation from Judge Mansfield's decision, *supra*, pages 38–39.

The Court concurs in the late Judge McLean's apt remark at oral argument of the motion to amend the complaint that it is "unfortunate" that Judge Mansfield was not available to decide the motion because he knew exactly what he meant in his opinion. However, the Court is convinced from a review of the entire record that had Judge Mansfield remained in the District Court he would have allowed Crane to amend its complaint, thereby reaching the same result, in effect, as is reached today.

Accordingly, the motion to dismiss the counterclaim is denied. Standard has not waived its right to a jury trial on the counterclaim.

It is so ordered.

---

8. "[I]n the atypical case the presumption (against waiver) may be indulged, or considered by the trial court as a factor in determining whether to exercise its discretion in favor of granting relief from waiver. . . ." J. Moore, Federal Practice, ¶ 38.43 at 336.2 (2d Ed. 1971).

9. See also Rule 39(b), Fed.R.Civ.P., which enables the Court in its discretion upon motion to order a trial by jury "notwithstanding the failure of a party to demand a jury. . . ." *See,* J. Moore, Federal Practice, ¶ 39.09 at 721 (2d Ed. 1971).