CRANE CO., Plaintiff,

v.

AMERICAN STANDARD, INC. and
Blyth & Co. Inc., Defendants.

No. 68 Civ. 1845.

United States District Court,
S. D. New York.

Sept. 30, 1980.

On Motion to Reargue and Amend
Judgment Dec. 8, 1980.

Pomerantz, Levy, Haudek & Block, New York City, Lord, Day & Lord, New York City, for plaintiff; Abraham L. Pomerantz, William E. Haudek, New York City, John W. Castles, 3d, Michael J. Murphy, Laurie E. Foster, New York City, of counsel.

Sullivan & Cromwell, New York City, for defendant American Standard, Inc.; Edward W. Keane, James E. Tyrrell, Jr., Robert C. Bata, New York City, of counsel.

Cahill, Gordon & Reindel, New York City, for defendant Blyth & Co., Inc.; Leonard A. Spivak, Donald S. Parker, Helene Fromm, New York City, of counsel.

## OPINION

ROBERT J. WARD, District Judge.

This action, now in its thirteenth year of existence, is once again before this Court.

The suit has been the subject of three decisions by the Court of Appeals: *Crane Co. v. Westinghouse Air Brake Co.*, 419 F.2d 787 (2d Cir.1969), *cert. denied*, 400 U.S. 822, 91 S.Ct. 41, 27 L.Ed.2d 50 (1970) (*"Crane I"*); *Crane Co. v. American Standard, Inc.*, 490 F.2d 332 (2d Cir.1973) (*"Crane II"*); and *Crane Co. v. American Standard, Inc.*, 603 F.2d 244 (2d Cir.1979) (*"Crane IV"*).[1] It has been remanded for this Court to determine whether it should, in the exercise of its discretion, adjudicate certain state law claims which plaintiff seeks to have resolved by invocation of the principles of pendent jurisdiction.

### Background

A brief recitation of the facts triggering this litigation is appropriate. The suit arose out of a battle between Crane Co. ("Crane") and American Standard, Inc. ("Standard") for control of Westinghouse Air Brake, Inc. ("Air Brake"). Crane began making substantial purchases of Air Brake stock on June 15, 1967, and continued to buy Air Brake stock throughout 1967 in spite of Air Brake's rejection of Crane's merger proposal. On February 20, 1968, Crane filed the requisite 14–B statements with the Securities and Exchange Commission in order to solicit proxies for the election of Air Brake directors. At that time, Air Brake stock sold on the New York Stock Exchange for about $36 per share. Shortly thereafter, Air Brake's board of directors approved a merger of Air Brake into Standard, under which Air Brake stockholders would receive one share of Standard convertible preferred stock (worth about $50) for each of their Air Brake shares. Air Brake stock rose to $44.

Crane responded by making a tender offer of subordinated debentures (with a total face value of about $50) for each Air Brake share. The offer was to expire at 5 p. m. on April 19, 1968. On April 10 Air Brake

1. The parties to this action were also before the Court of Appeals in a companion case, *American Standard, Inc. v. Crane Co.*, 510 F.2d 1043 (2d Cir.1974), *cert. denied*, 421 U.S. 1000, 95 S.Ct. 2397, 44 L.Ed.2d 667 (1975), which is occasionally referred to as *"Crane III."* This decision involved the question of Crane's liability for short–swing profits under § 16(b) of the Securities Exchange Act of 1934.

stock sold at about $49 per share. However, by April 18 the price at which Air Brake stock sold had fallen to about $45.

On April 19, the day on which Crane's tender offer was due to expire, Air Brake stock opened at $45.25. On that day, Standard purchased 82,400 shares of Air Brake stock on the open market at an average price of $49.08 per share. However, on April 19 Standard also made undisclosed sales of 100,000 shares to a friendly investment company at $44.50, and of 20,000 shares to a friendly investment banking house at $44.875.

Crane failed to acquire sufficient shares to defeat Standard's merger proposal and, at a May 6 stockholders meeting, the shareholders of Air Brake approved the merger of Air Brake into Standard. The merger became effective on June 7, at which time Crane's interest in Air Brake was exchanged for 740,311 shares of Standard convertible preferred stock pursuant to the terms of the merger. However, Crane sold all but 10,000 of these preferred shares on June 13; this sale was in response to the threat of an antitrust action to be brought by Standard on the ground that Crane and Standard were major competitors in the plumbing industry.[2]

### Crane I, II and IV

While the Court assumes general familiarity with the course of this litigation, some restatement of the events which have brought the action to its present posture is necessary. Crane brought suit on April 17, 1968, claiming that Air Brake had made misrepresentations in its proxy statement soliciting votes in favor of the merger. On May 6, Crane filed a second action charging that Standard's conduct on April 19 constituted "market manipulation" in violation of Sections 9, 10, and 14 of the Securities Exchange Act of 1934 (the "1934 Act") (15 U.S.C. §§ 78i, 78j, 78n (1976)), Rules 10b–5 and 10b–6 (17 C.F.R. §§ 240.10b–5, 240.-10b–6 (1980)), and Regulation 14A (17 C.F.R. §§ 240.14a–1–240.14a–12 (1980)). The actions, both seeking equitable relief, were consolidated and tried before Judge Ryan of this Court. Subsequent to the hearing, Judge Ryan dismissed the consolidated complaint. *Crane Co. v. American Standard Inc.*, [1967–69 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,228 (S.D.N.Y. 1968).

The Court of Appeals, in *Crane I*, generally affirmed Judge Ryan's judgment, but reversed his dismissal of the market manipulation claims. Specifically, the Court of Appeals held that Crane had standing to sue under the 1934 Act, and that Standard's transactions in Air Brake stock on April 19 had violated § 9(a)(2) of the 1934 Act and also Rule 10b–5. 419 F.2d at 798. It remanded the action to this Court for determination of the appropriate remedies. *Id.* at 803.

On remand, Judge Ryan recused himself and the case was assigned to Judge Mansfield. When Judge Mansfield became a member of the Court of Appeals, the action was reassigned to Judge McLean. Upon Judge McLean's death, the case was transferred to me. During this period, the parties became embroiled in what Judge Friendly was aptly to term "a Brobdingnagian procedural imbroglio," 490 F.2d at 334, the details of which will not be recapitulated here. This phase of the litigation generated several orders of this Court, including one requiring that Crane amend its complaint and submit to a trial before a jury in order to be entitled to an award of damages. *See American Standard, Inc. v. Crane Co.*, 60 F.R.D. 35, 43 (S.D.N.Y.1973). The Court of Appeals reversed this order in *Crane II*, 490 F.2d at 345, and again remanded the action to this Court for "the determination of the amount of damages, if any." *Id.* at 341.

Upon the remand, a five week trial on the issue of damages and the related issue

---

**2.** This sale sparked a distinct action which was to give rise to *Crane III*. The history of this particular action, including the decision of the Court of Appeals in *Crane III*, is described in note 5 *infra*.

of causation[3] took place before this Court. However, before this Court had rendered its decision, the Supreme Court announced its opinion in *Piper v. Chris–Craft Industries, Inc.*, 430 U.S. 1, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977) ("*Piper*"), in which it held that a "tender offeror" suing in its capacity as a takeover bidder does not have standing to maintain an action for damages under the Williams Act. As a result, this Court reconsidered whether Crane had standing in the present action under the 1934 Act, concluded that it did not, and ruled that Standard was entitled to judgment in its favor with regard to Crane's claims under the federal securities laws. *Crane Co. v. American Standard, Inc.*, 439 F.Supp. 945, 958 (S.D.N.Y.1977). At the same time, this Court dismissed any pendent claims Crane might have been maintaining under state law. *Id.* at 951 n.2.

In *Crane IV*, the Court of Appeals affirmed this Court's dismissal of Crane's claims under the federal securities laws. 603 F.2d at 251, 253. However, the Court of Appeals remanded the matter for further consideration of the dismissal of the state law claims. *Id.* at 254. Specifically, the Court of Appeals held that this Court had the power to adjudicate any state claims which might have been presented by Crane in the present action, and directed it to determine whether to exercise its discretion to decide these claims. *Id.* at 253–54. In so ruling, the Court of Appeals explicitly stated that it intimated no view as to the validity of any of those claims, and also directed this Court to consider whether Crane had alleged and preserved these claims during the course of the litigation. *Id.* at 255 n.24. Thus the action has once again returned here, beginning a new adjudicative saga which perhaps will ultimately be entitled "*Crane V.*"

### Analysis

The Court of Appeals has left three basic issues for this Court to consider. Initially, the Court must decide whether any claim under state law is indeed properly before it. Second, assuming that Crane has properly raised and preserved a claim under state law, the Court must determine whether, in the exercise of its discretion, it should adjudicate that claim. Finally, if the Court concludes that Crane has properly raised and preserved a state claim over which the Court should exercise pendent jurisdiction, the Court must resolve that claim under the applicable state law.

Crane argues that it has properly alleged and preserved five distinct pendent claims, each sounding under New York law. According to Crane, it has raised common law causes of action against Standard for (1) market manipulation, (2) fraud, (3) prima facie tort, (4) violation of the Martin Act, and (5) interference with prospective business advantage. Crane contends that it is a relatively simple matter for the Court to resolve these pendent claims on the existing record, and thus argues that the Court should exercise its discretion and proceed to adjudicate the state law claims. Finally, Crane contends that the record as it stands requires the Court to rule in Crane's favor with respect to each of these five pendent claims. For the reasons stated below, the Court is of the opinion that Crane has not in fact alleged and preserved any state claim during the course of this litigation and concludes that the Court may not attempt to resolve the claims now put forth by Crane. Further, even in the event Crane were correct in arguing that one or more pendent state claims are properly before the Court, the Court believes that an exercise of its discretion to adjudicate such claims would not be appropriate.

Crane's consolidated complaint, filed May 6, 1968, did properly allege a state claim in addition to the federal securities law claims. In the first paragraph of the complaint Crane invoked the principles of pendent jurisdiction to establish the jurisdiction of the Court. Complaint at ¶ 1. The reason for this invocation was made clear when Crane alleged later in the complaint that

---

**3.** The causation issue concerned whether Standard's illegal market manipulation caused the failure of Crane's tender offer. *See* 490 F.2d at 344.

Standard's proxy solicitation was done in violation of the federal securities laws and "the applicable law of Pennsylvania, and common law." Complaint at ¶ 14.

In addition to illegal proxy solicitation, Crane alleged in its consolidated complaint that Standard (1) entered into secret agreements to purchase stockholder voting rights, Complaint at ¶ 16, (2) used a false and misleading proxy statement to engage in its proxy solicitation, Complaint at ¶ 18, and (3) engaged in market manipulation, Complaint at ¶ 19. Crane contended that each of these alleged instances of conduct also violated the federal securities laws. However, it did not state or even suggest that any of these latter allegations would, if proved, make out a violation of any relevant state law. In short, the only state law claim in Crane's complaint was made in relation to Standard's proxy solicitation.

Crane's claims were tried before Judge Ryan, who dismissed the consolidated complaint in its entirety. *Crane Co. v. American Standard Inc.*, [1967–69 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,228 (S.D.N.Y. 1968). In so doing, Judge Ryan explicitly recognized that Crane had presented a state law claim in connection with Standard's proxy solicitation. *Id.* at 97,058–59. He did not suggest that Crane had presented any other state law claim.

The Court of Appeals, in *Crane I*, generally affirmed Judge Ryan's decision. However, the *Crane I* court did hold that Standard's "market manipulation" on April 19 constituted a violation of the federal securities laws, and thus reversed Judge Ryan's decision on that point. 419 F.2d at 803. Crane had phrased its market manipulation claim solely in terms of the federal securi-

ties laws.[4] The *Crane I* court stated, with respect to Crane's market manipulation claim, that it found "violation of both section 9(a)(2) and Rule 10b–5," 419 F.2d at 798, indicating that it viewed this claim to be exclusively federal. To repeat: The market manipulation claim was the only Crane claim to survive *Crane I*; Judge Ryan's dismissal of the other Crane claims, including the state and federal claims made in connection with Standard's proxy solicitation, was affirmed in *Crane I*. *Id.* at 803. As a result, after the remand in *Crane I* there were no state claims before this Court in the present action.

Crane has at no point in the subsequent eleven years amended its complaint to include any new state claim. On July 13, 1971, Crane did file a motion for leave to serve an amended and supplemental complaint. The first count of this proposed amended complaint sought to recover damages for violations of the federal securities laws and "of the common law." Proposed Supplemental Amended Complaint at ¶ 1. Specifically, it charged that Standard's market manipulation constituted "a common law fraud." *Id.* at ¶ 14. Crane sought to amend its complaint in this fashion in order to provide a foundation for its claim to punitive damages, since punitive damages are not available under the 1934 Act. Affidavit of John W. Castles, 3d, May 27, 1970, at 11; *see Green v. Wolf Corp.*, 406 F.2d 291, 302–03 (2d Cir.1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969). This Court denied Crane's motion as "moot" in view of its ruling allowing Crane to maintain a substantially identical claim as a counterclaim in a companion action.[5] *American Standard, Inc. v. Crane*

---

**4.** Crane's market manipulation claim was contained in paragraph 19 of its consolidated complaint, which reads as follows:

> 19. Standard's aforesaid acts and practices also constituted violations of the anti–manipulative provisions of the [1934] Act, and particularly Rules 10b–5 and 10b–6 promulgated by the Securities and Exchange Commission thereunder.

**5.** This companion case was triggered by Crane's sale of its interest in Standard after the

failure of Crane's tender offer. As described above, the sale was motivated by the threat of an antitrust action to be brought by Standard on the ground that Crane and Standard were major competitors in the plumbing industry. Subsequent to the sale, Standard instituted an action under § 16(b) of the 1934 Act, alleging that Crane was liable for the short–swing profits it had earned on the entire sequence of transactions described above. After a good deal of procedural maneuvering on the part of both sides, Crane ultimately responded by (1)

*Co.*, 60 F.R.D. 35, 39 n.3 (S.D.N.Y.1973). As a result, Crane's proposed amended complaint was never served, and the state law cause of action contained therein never came before this Court in the present action.

This fact is made clear by the decision of the Court of Appeals in *Crane II*, which came down after the ruling of this Court described above. There the court held that Crane's new demand for money damages rather than equitable relief did not give Standard the right to a retrial before a jury; the *Crane II* court reasoned that a ruling to this effect would involve relitigation of the issues already decided in *Crane I.* 490 F.2d at 343. It is plain upon reading the opinion that the *Crane II* court did not think a new state law claim had been added to the purely federal claims which remained after *Crane I.* Indeed, the "relitigation rationale" which underpinned the *Crane II* court's holding would appear to depend entirely on an understanding that the issues in the case were identical to those already decided in *Crane I.*

■ There being no other point at which Crane even arguably sought to add a state law claim to its action, the Court accordingly is of the opinion that at the present time no state law claim is properly before it.[6]

filing a third party complaint against the directors of Air Brake, seeking indemnity from them should Crane be found liable on the § 16(b) claim, and (2) answering Standard's suit by alleging that Crane's transactions were not "purchases" and "sales" within the meaning of § 16(b) and by interposing a counterclaim against Standard alleging that Standard had engaged in unlawful conduct which forced Crane's sale and damaged Crane in excess of $50 million. Standard moved for summary judgment on its § 16(b) claim; its motion was granted by Judge Lasker. *American Standard, Inc. v. Crane Co.*, 346 F.Supp. 1153, 1173 (S.D.N.Y.1972). However, the Court of Appeals, in what is sometimes called *Crane III*, reversed this decision and ordered that Standard's § 16(b) complaint be dismissed. *American Standard, Inc. v. Crane Co.*, 510 F.2d 1043, 1063 (2d Cir.1974), *cert. denied*, 421 U.S. 1000, 95 S.Ct. 2397, 44 L.Ed.2d 667 (1975). Standard also moved to dismiss Crane's counterclaim. This Court denied that motion in *American Standard, Inc. v. Crane Co.*, 60 F.R.D. 35, 43 (S.D.N.Y.1973). The decision of the Court of Appeals in *Crane II* reversed this Court's separate ruling that Standard was entitled to a jury trial with respect to the counterclaim, leaving the counterclaim pending before this Court. 490 F.2d at 345. Contrary to Crane's statement in its brief, see Crane's Post Trial Reply Memorandum On Its State Law Claims, Apr. 22, 1980, at 21, the counterclaim is not still pending before this Court. Subsequent to *Crane II*, Standard renewed its motion to dismiss the counterclaim, on the ground that its further litigation was precluded by Judge Friendly's statement in *Crane II*, see 490 F.2d at 340–41, that the issues in the counterclaim were resolved in *Crane I* and could not now be relitigated. This Court granted Standard's motion and ordered dismissal of the counterclaim. *American Standard, Inc. v. Crane Co.*, [1974–75 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 94,787 (S.D.N.Y.1974).

The answer filed by Crane in this companion action stated that "the jurisdiction of the counterclaim rests ... on the principles of pendent jurisdiction." Answer of Defendant Crane Co. to Amended Complaint in Consolidated Action, Mar. 24, 1969, at ¶ 34. Crane then claimed that "the acts and transactions of Standard and Air Brake alleged herein constitute a willful and deliberate tort against Crane." *Id.* at ¶ 48(c). Crane's counterclaim in this companion action thus did set forth a state law claim. However, this fact is of no relevance to the issue presently before the Court. As noted above, the counterclaim was dismissed six years ago by this Court. *American Standard, Inc. v. Crane Co.*, [1974–75 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 94,787 (S.D.N.Y.1974). Crane took no appeal from the order of dismissal. The counterclaim, including the state law cause of action set forth therein, was entirely distinct from the present action and in no way ever became a part thereof. The erstwhile existence of the counterclaim cannot, therefore, form a basis for concluding that state law claims are at this point properly before the Court in the present action.

6. This conclusion is underscored by the Pretrial Order entered by this Court on March 2, 1976. This document contains no declaration that Crane had raised any state law claims. Crane points to its statement on page 132 of the Pretrial Order that "the plaintiff is entitled to recover an award of punitive damages," and observes that, since the federal securities laws do not afford punitive damages, this phrase alone should have been sufficient to put Standard (and presumably the Court) on notice that Crane alleged state claims. In the Court's view, it is preposterous to expect that such an oblique reference, standing by itself in the course of a Pretrial Order extending 145 pages, will constitute adequate notice of a claim, particularly where the pleadings give no hint that such a claim has been presented.

Crane argues, however, that it should be permitted to assert its state law claims now even if it has never previously done so.

Rule 15(b), Fed.R.Civ.P., provides that in appropriate circumstances the pleadings shall be deemed amended to conform to the proof at trial.[7] In this circuit, the fact that such amendment would involve a change in the nature of the cause of action, or the legal theory of the action, is of itself immaterial to the decision whether Rule 15(b) ought to be applied. *Lomartira v. American Automobile Insurance Co.*, 371 F.2d 550, 552 (2d Cir. 1967); *Northern Oil Co. v. Socony Mobil Oil Co.*, 347 F.2d 81, 83–84 (2d Cir. 1965). Rather, the most important question is whether the new issues were tried, as required by Rule 15(b), by the parties' express or implied consent. *Browning Debenture Holders' Committee v. DASA Corp.*, 560 F.2d 1078, 1086 (2d Cir. 1977); *Lomartira, supra*, 371 F.2d at 552. Specifically, the analysis of the trial judge should focus on potential prejudice to the resisting party, by inquiring whether such party had a fair opportunity to defend against the new theory or could be expected to offer new evidence if the case were to be retried on that theory. *Browning, supra*, 560 F.2d at 1086. The existence of such prejudice creates a presumption that there was no implied consent to trial of the issue in question. Since the Court has concluded,

for the reasons presented below, that Standard would be prejudiced were the complaint to be deemed amended to include Crane's state law claims, the Court is of the opinion that these claims were not tried by the parties' express or implied consent, and that Crane thus may not use Rule 15(b) to justify asserting its state law claims now for the first time.

In *Crane I*, the Court of Appeals remanded the present action to this Court to determine the appropriate remedies in connection with Standard's violation of the federal securities laws. 419 F.2d at 803. As the Court of Appeals was later to note in *Crane II, see* 490 F.2d at 344, the mandate of *Crane I* implicitly required this Court to consider the chain of causation between Standard's conduct and Crane's injury.[8] The causation issue was examined by this Court in the course of the trial which occurred following the remand in *Crane II*. At the trial, Standard contended that Crane should be required to show that the tender offer would have succeeded *but for* Standard's illegal conduct. *Crane Co. v. American Standard, Inc.*, 439 F.Supp. 945, 955 (S.D.N.Y.1977). Crane, for its part, did not suggest that a different standard of causation was appropriate, but argued instead that it was entitled to a presumption of "but for" causation.[9] *Id.* at 956 n.4. It

7. Rule 15(b) reads as follows:

    (b) *Amendments to Conform to the Evidence.* When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is. objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court

may grant a continuance to enable the objecting party to meet such evidence.

8. The Supreme Court, in reaffirming the right of a plaintiff to receive damages where a merger had been consummated in the face of a pending equity suit alleging violation of the federal securities laws, has cautioned that "damages should be recoverable only to the extent that they can be shown," *Mills v. Electric Auto–Lite Co.*, 396 U.S. 375, 389, 90 S.Ct. 616, 624, 24 L.Ed.2d 593 (1970). The particular causation issue before the Court concerned whether Standard's "market manipulation" caused the failure of Crane's tender offer.

9. Crane, in its trial brief, stated that "[a]lthough Crane shall offer, as a precautionary measure, expert evidence to demonstrate that it would have received substantially more than the 13% of Air Brake *but for* the defendants' fraud, we submit that the facts of this case entitle Crane to a presumption that *but for* the fraud Crane

reasoned that the number of shares it would have garnered but for Standard's manipulation is a "classic imponderable," and asked the Court to infer the requisite causal connection on the ground that it had been rendered uncertain by Standard's own acts.

This Court, in reliance upon Judge Friendly's statement in *Crane II*, 490 F.2d at 344, ruled that the "but for" test was the correct standard to apply to the causation issue, and further held that Crane had failed to demonstrate the causal connection necessary to satisfy this test. *Crane Co. v. American Standard, Inc.*, 439 F.Supp. 945, 958 (S.D.N.Y.1977). The Court also declined to draw the inference of "but for" causation in the manner suggested by Crane. *Id.* at 956 n.4.

Crane contends that the state law claims which it now proposes to assert would not be subject to the "but for" test earlier applied by this Court, but rather to a less stringent test under which Crane would be required to show only that there was a *reasonable probability* that Standard's market manipulation actually accomplished the result it was intended to cause. Crane's Post Trial Memorandum On Its State Law Claims, Feb. 5, 1980, at 21–25; *see Continental Insurance Co. v. Mercadante*, 222 App.Div. 181, 186–87, 225 N.Y.S. 488, 494 (1st Dept. 1927). The accuracy of Crane's analysis of New York law is not of any present moment to the Court. Crane's theory of causation would require the Court to reconsider the evidence of causation presented to the Court in the previous trial, in order to see whether a "reasonable probability" of a causal connection might be found where a "but for" causal connection was not. In the Court's view, such a reconsideration would clearly prejudice Standard. The "reasonable probability" test now espoused by Crane was in no sense before the Court in the prior trial, precisely because the state law claims related to this test were not then before the Court. The evi-

dence on causation was not presented to this Court, nor was it received by this Court, with a view to whether it made out a reasonable probability of a causal link. Standard had no incentive or reason to make a case as to whether such a reasonable probability existed, because this was not an issue upon which the case was being tried.

The Court of Appeals' most recent treatment of Rule 15(b), in *Browning, supra*, is most instructive in this connection. There plaintiffs had sought after trial to amend the pleadings under Rule 15(b) in order, *inter alia*, to raise a number of new claims. 560 F.2d at 1085. One of these claims alleged deficiencies in a proxy solicitation letter prepared by defendant DASA Corp. *Id.* Judge Owen denied plaintiffs' motion. The Court of Appeals, commenting that DASA "surely would have wanted to adduce additional evidence if the issue had been raised and tried," ruled that "[t]o allow the addition of this claim after trial would substantially prejudice DASA." *Id.* at 1086. It consequently affirmed Judge Owen's ruling that there had been no express or implied consent to trial of this issue.

This Court is of a similar mind in the present case. "The purpose of an amendment to conform to proof is to bring the pleadings in line with the actual issues upon which the case was tried." 3 Moore's Federal Practice ¶ 15.13[2] at 15–171 (2d ed. 1979). The issue of whether there existed a reasonable probability of a causal connection between Standard's market manipulation and the failure of the tender offer was not among the issues litigated at the trial. Standard undoubtedly would have wanted to focus its evidence on this issue had it been raised and tried. The Court is thus of the opinion that Standard would be prejudiced were Rule 15(b) invoked to permit Crane to raise its state claims now, and accordingly declines to grant such permission.[10]

For the reasons just described, the Court would not be inclined to exercise its

---

would have prevailed." Crane Co.'s Trial Brief, Apr. 5, 1976, at 8 (emphasis supplied).

**10.** Other substantial considerations militate against this Court invoking Rule 15(b) to allow Crane to raise its state claims now for the first time. Besides the concern of whether allow-

discretion to hear Crane's state law claims even if Crane either had properly alleged and preserved them or could be allowed to raise them now. Such an exercise of discretion would have to be justified by considerations of judicial economy, convenience, and fairness to the litigants. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). In the Court's view, were Crane's state claims properly before the Court they could not, in fairness to Standard, be resolved on the present record. This is so because these claims are founded on a different theory of causation than that previously litigated before the Court. Thus, no judicial economy would inhere in having this Court resolve Crane's state claims, because a new trial would plainly be required. Since the federal claims in the present case have already been dismissed, the Court would accordingly be guided by the Supreme Court's observation in *Gibbs* that "if the federal claims are dismissed before trial ... the state claims should be dismissed as well." *Id.*

### Conclusion

The Court finds that Crane has not alleged and preserved any state claim during the course of this litigation, and that Crane cannot now be allowed to raise any such claim for the first time. Accordingly, the action should be dismissed.

It is so ordered.

## ON MOTION TO REARGUE AND AMEND JUDGMENT

Plaintiff Crane Co. ("Crane") moves, pursuant to Rule 9(m) of the General Rules of this Court and Rule 59(e), Fed.R.Civ.P., to reargue and amend the September 30, 1980 order dismissing this action and the judgment entered thereon. For the reasons hereinafter stated, Crane's motion is denied.

Crane contends that the Court's opinion and order of September 30, 1980 is erroneous in two respects. First, Crane takes issue with the Court's statement that Crane's counterclaim in a separate action, *American Standard, Inc. v. Crane Co.*, 68 Civ. 2461 ("No. 2461"), "was dismissed six years ago by this Court." *See* 88 F.R.D. at 203 n.5. Crane argues that the Court's order of dismissal was conditional, in that it was not to take effect if one of the parties advised the Court within ten days of the

---

ance of the amendment would unduly prejudice the opposing party, the trial judge's discretion in these matters is guided by the presence or absence of undue delay, bad faith or dilatory motives on the part of the movant. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Browning, supra*, 560 F.2d at 1086. The present action is currently in its thirteenth year before the courts of this circuit. This Court is of the opinion that Crane has had ample opportunity, during the course of over a decade of litigation, to put Standard and the Court on proper notice that it wished to present the state law claims it now seeks to raise. *See Rogers v. Valentine*, 426 F.2d 1361, 1363 (2d Cir. 1970); *Wheeler v. West India S. Co.*, 205 F.2d 354 (2d Cir.), *cert. denied*, 346 U.S. 889, 74 S.Ct. 141, 98 L.Ed. 393 (1953); *Rolf v. Blyth Eastman Dillon & Co.*, 424 F.Supp. 1021, 1045 (S.D.N.Y.1977). *rev'd on other grounds*, 570 F.2d 38 (2d Cir.), *cert. denied*, 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978).

The Court's inclination not to exercise its discretion to allow Crane to raise its state claims is only fortified by Crane's explanation for its delay. Crane explains that it confined itself to a federal claim in reliance upon the Court of Appeals' decision in *Crane I* that it had standing to raise such a claim, which reliance proved to be misplaced after the Supreme Court's decision in *Piper*. Crane suggests that, in view of this reliance, it would be unfair now to deny it the right to pursue the state claims which it formerly abandoned. In the Court's view, Crane abandoned its state law claims not "in reliance" upon *Crane I* but rather in order to take advantage of the decision in *Crane I*. *Crane I* ruled that Standard's market manipulation violated the federal securities laws, but made no finding that the manipulation violated any state law. Crane has throughout the course of this litigation stressed that Standard's market manipulation was conclusively determined to be unlawful in *Crane I*, and has thus insisted that questions of Standard's *liability* were foreclosed. Of course, Standard has never been found to have violated any state law. The addition of state law claims to Crane's action would have substantially diminished the force of Crane's argument that the Court's inquiry had to be confined to damages. To the Court's mind, these considerations, and not innocent reliance on the decision in *Crane I*, substantially explain Crane's failure to raise the state claims until the present time.

date of the decision (August 30, 1974) that it desired a jury trial in No. 2461 on the question of the amount of damages. Crane states that its counsel so advised the Court on September 9, 1974, and that Crane's counterclaim in No. 2461 is thus in fact still pending before the Court. Second, Crane disputes the Court's statement that Crane's motion for leave to serve an amended and supplemental complaint in the present action, *Crane Co. v. American Standard, Inc.*, 68 Civ. 1845 ("No. 1845") was denied by the Court "as moot." *See* 88 F.R.D. at 206, 207. Pointing out that the Court never formally endorsed Crane's moving papers, Crane apparently takes the postion that this motion is still pending before the Court.

In its opinion and order of September 30, 1980, the Court concluded that Crane (1) had not alleged and preserved any state claim during the course of the litigation of No. 1845 and (2) could not be allowed to raise such a claim for the first time now. The Court ordered No. 1845 dismissed on the basis of this conclusion. Crane has not explained, and it is not at all apparent to the Court, why the Court's conclusion, or its order and the resulting judgment, should be altered if either of Crane's contentions were correct. The essential facts are not called into question by Crane's arguments. The counterclaim in No. 2461 was raised in an entirely separate action which never became a part of No. 1845. The motion for leave to amend in No. 1845 was never granted and the proposed amended and supplemental complaint was never served or filed. The state claims alleged in these two documents thus never came before the Court in No. 1845.

In sum, even if Crane's contentions were correct, the Court's order and the resulting judgment dismissing No. 1845 would be unchanged. Where, as here, no useful purpose can be served by amending a judgment in the manner requested, a motion for amendment is properly denied. 11 C. Wright & A. Miller, Federal Practice & Procedure § 2817, at 111 (1973); *see, e.g., American Elastics, Inc. v. United States*, 84 F.Supp. 198, 199 (S.D.N.Y.1949). It is unnecessary, then, for the Court to consider the validity of Crane's two contentions.

Crane's instant motion is accordingly denied in all respects.

It is so ordered.